IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

SAMUEL JEFFERSON,

    Plaintiff,

vs.                                                                No. 15-2012-JDT-dkv

STEVE COHEN, in Official Capacity;
A. C. WARDEN [sic], in Official Capacity;
JANIS FULLILOVE, in Official Capacity;
FORD FUNERAL PARLOR/FUNERAL
SERVICE/DIRECTORS; JOE FORD;
HAROLD FORD, JR., in Official Capacity;
JOHN FORD, in Concert with the Above Parties;
HAROLD FORD, SR.; OPHELIA FORD;
RICKY [sic] PETE [sic], (or Peate, 'Misnomer');
and 14TH AMD SECT 5,

    Defendants.

REPORT AND RECOMMENDATION FOR SUA SPONTE DISMISSAL

On January 6, 2015, the plaintiff, Samuel Jefferson ("Jefferson"), a resident of Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1985, accompanied by a motion seeking leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) In an order issued on January 8, 2015, the court granted leave to proceed *in forma pauperis*. (ECF No. 4.) This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, April 29, 2013.) For the reasons that follow, it is recommended that this case be dismissed as frivolous.

## I.  PROPOSED FINDINGS OF FACT

In his complaint, Jefferson states:

> "I claim that Mr. Steve Cohen ("Cohen") did act in his official capacity, while acting in violation outside the bounds of his federal duty to assasinate [sic] me on approximately August 14th or 15th of 2014, or somewhere along that month and period.  On approximately August 15th 2014[,] Eli Lilly Drug Company paid Congressman Steve Cohen to send four men to my, (Samuel Jefferson's) address of 3396 Raleigh Millington Rd; Mr. Cohen employed these four men to break into the residence by breaching the lock and forcing Samuel Jefferson into a chair in his living room and forcing him under gunpoint to smoke crack cocaine, and then injecting me Samuel Jefferson with something through my veigns [sic] on my right foot.  Three of these men were tending to keeping me sitting and taking drugs and injections, and the fourth or (other man) was searching and scattering through my legal files and court papers in case No. 3:10-cv-754 against Eli Lilly.  After smoking about one $20 dollar dock of crack cocaine, I saw one of the three[,] the second man pulled my shoe off of my right foot and then my sock.  I panicked when I felt and saw the needle go in my foot, and I bolted hard and went headlong through the window, and onto my front porch. . . . I was taken to Methodist North Hospital, and my report was taken. . . .  I was diagnosed as high on crack cocaine, and paranoid or delusional. . . .  I claim that Steve Cohen conspired to have me killed, as he was paid to do so by Eli Lilly Drug Company, who were trying to prevent my prosecution of case No. 3:10-cv-00754."

(Compl., ECF No. 1 at 4-5.)

The complaint includes five more paragraphs specifically regarding Cohen's involvement in the conspiracy:  "[Cohen] paid 4 men to breach my home," "forced into a cocaine relapse by Cohen's bandits and assassins," "breach and envade[sic] my files," and "Cohen knew . . . that I had a drug history, and mental ill history."  (*Id.*, at 6.)  Jefferson also claims that

Cohen conspired to have him held against his will inside his (Jefferson's) home. (*Id.*, at 11.)

Also named as defendants are A. C. Warden[sic] ("Wharton"), Janis Fullielove [sic] ("Fullilove"); Ford Funeral Parlor/Funeral Service/Directors, Joe Ford, Harold Ford, Jr., John Ford, Harold Ford, Sr., Ophelia Ford (collectively "Ford"); Rickey Pete, or (Peate)[sic] ("Peete"); 14th Amd Sect. 5. Jefferson contends that Wharton paid private citizens to harass him on several occasions and conspired to extort money from him. (*Id.*, at 7-8.) Jefferson claims that Fullilove "conspired to extort me." (*Id.*, at 8.) The complaint further states that Ford vehicles "started pulling up beside me every day, and the drivers would blow their horns, and grimace at me" in an effort to intimidate Jefferson. The complaint further states Ford also conspired to impede Jefferson's rights, intimidate him, and extort from him. (*Id.*, at 9-10.) Jefferson also asserts that Peete "acted in concert with Warden [sic], and Fullylove [sic], and Joe Ford to intimidate me, and to have the four men to attempt to kill, assasinate [sic] me or murder me to impede my rights. . . ." (*Id.*, at 10-11.)

In his Request for Judgment, Jefferson asks that Cohen be forced "to stop his acts of conspiracy against me, or face the

3

highest penalty of law behind bars. . . . And that he, Mr. Cohen, declare . . . that he would never attempt to harm me again." Jefferson asks that Wharton "appologise [sic] to me for all the crimes he employed our innocent citizens to carry out against me, or face . . . prison." Jefferson further asks that Fullilove be forced to stop her participation in the conspiracy, that Ford be forced to stop harassing him, and that Harold Ford, Jr., be forced to stop the conspiracies. Jefferson states he wants to "OMMIT [sic] Relief Request against Harold Ford Sr. due to old age and past duty, And Respect."

II. PROPOSED CONCLUSIONS OF LAW

A. <u>28 U.S.C. § 1915(e)(2) Screening</u>

Pursuant to Local Rule 4.1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2). The clerk is authorized to issue summonses to *pro se* litigants only after that review is complete and an order of the court issues. This report and recommendation will constitute the court's screening.

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action

  (i)  is frivolous or malicious;

  (ii)  fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

B. <u>Standard of Review for Failure to State a Claim</u>

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(quoting *Iqbal*, 556 U.S. at 681)(alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."). "A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state

a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 Fed. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 Fed. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231

6

(2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 Fed. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

C. <u>Factually Frivolous Claims</u>

Jefferson's claims are factually frivolous. His claims that Congressman Cohen, Mayor Wharton, Councilwoman Fullilove, former Councilman Joe Ford, former Congressmen Harold Ford, Sr., and Harold Ford, Jr., State Senator Ophelia Ford, and former Councilman Rickey Peete have conspired to assassinate, extort, intimidate, kidnap, and harass him and that he was forced to smoke crack cocaine and that crack cocaine was injected into his foot against his will are "clearly baseless," "fanciful," "fantastic," or "delusional." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* at 33. Indeed, Jefferson admits in his complaint that he "was taken to Methodist North Hospital . . . and diagnosed as high on crack

7

cocaine, and paranoid or delusional." Jefferson's claims are clearly baseless and delusional and thus factually frivolous, *Huey v. Raymond*, 53 F. App'x 329, 330-31 (6th Cir. 2002), and lack an arguable basis in law and fact.

## III. RECOMMENDATION

For the foregoing reasons, it is recommended that the complaint be dismissed *sua sponte* as frivolous, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i), and judgment be entered for the defendants.

Respectfully submitted this 14thday of January, 2015.

s/Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. FED. R. CIV. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.